**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| AMBER SMITH, on behalf of herself and all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>WALMART INC.,<br><br>*Defendant.* | Case No. ____________________<br><br>CLASS ACTION COMPLAINT<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff AMBER SMITH, on behalf of herself and all others similarly situated, brings this Class Action Complaint (the "Complaint") against Defendant WALMART INC. ("Walmart") for violations of Illinois' state law as set forth herein in connection with Defendant's unlawful collection of biometric information (the "Action"), which Plaintiff AMBER SMITH makes based upon personal knowledge as to herself and her own actions, and upon information and belief, including the investigation of counsel as follows:

## NATURE OF THE ACTION

1. Walmart is one of the most ubiquitous and ever-present superstore and product companies in the world.

2. Each time an individual calls their local Walmart store, they frustratingly have to go through the process of talking to an automated interactive voice system ("Walmart's AI Voice System") which collects, stores, and disseminates their voiceprints. While this adds convenience for Walmart and saves them money by thwarting the necessity of having customer service controlled by actual human beings, it forces Walmart's customers to unknowingly surrender their biometric information to Walmart as voiceprints are as unique as fingerprints, facial recognition templates, and iris scans. In fact, many organizations, including banks, now allow users to gain access to their accounts over the phone through the use of their voiceprint – which exemplifies how valuable voiceprints are and the need to protect them from parties who collect them without consent.

3. On behalf of themselves and all other similarly situated Illinois residents, Plaintiff Smith brings this Action against Defendant Walmart Inc. under the Illinois Biometric Information Privacy Act ("BIPA") to seek actual and statutory damages, other forms of redress and injunctive relief for the privacy violations set forth herein.

## JURISDICTION AND VENUE

4. *Subject Matter Jurisdiction.* This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act because (1) there are more than 100 putative Class members, (2) the aggregate amount-in-controversy, exclusive of costs and interest, exceeds $5,000,000.00, and (3) there is minimal diversity because Plaintiff and Defendant are citizens of different states – namely, that Plaintiff is an Illinois resident and the Defendant is incorporated in Massachusetts and is headquartered in Arkansas.

5. *Personal Jurisdiction.* This Court has personal jurisdiction over the Defendant because the Plaintiff and Class members are domiciled in this District, Defendant is registered to do business in Illinois and Defendant has been sued before in this District as well. Additionally, this Court has personal jurisdiction over the Defendant because they have substantial contacts with this District and have purposely availed themselves to the Courts in this District.

6. *Venue.* In accordance with 28 U.S.C. 1391, venue is proper in this District because a substantial part of the conduct giving rise to the Plaintiff's claims occurred in this District, and the Defendant transacts business within this District. In accordance with 28 U.S.C. § 1391, venue is proper in this District because a substantial part of the conduct giving rise to Plaintiff's claims occurred in this District, Defendant transacts business in this District, and Defendant has intentionally availed themselves of the laws and markets within this District.

## PARTIES

### PLAINTIFF

***Plaintiff Amber Smith***

7. Plaintiff Smith is an Illinois resident domiciled in Winnebago County, Illinois.

8. Plaintiff Smith's biometric identifiers were unlawfully collected by Walmart by way of her calling Walmart's AI Voice System twice in December of 2025 and once in July of 2026. Plaintiff Smith had no idea that her biometric identifiers – specifically, her voiceprint – which was used to identify her when Walmart's AI Voice System was being utilized upon her calling each time to her local Walmart store in Illinois.

9. As a result of Defendant's conduct, Plaintiff Smith is gravely concerned and upset about the collection of her biometric information – which she views as a form of surveillance without adequate consent and is especially worried because she also uses her voiceprint to unlock other highly confidential services, like her bank accounts, which legally collect her voiceprint due to its ability to serve as a biometric identifier. Additionally, Plaintiff Smith was harmed by way of state law, which provides redress for the unlawful collection of biometric information without adequate consent because of the inherent privacy concerns related to biometric information collection

### DEFENDANT

***Defendant Walmart Inc.***

10. Defendant Walmart Inc. is an Bentonville, Arkansas superstore and product company.

## FACTUAL ALLEGATIONS

### ***BIPA and The Importance of Protecting Biometric Information***

11. Biometric data is extremely sensitive.

12. There are two main classes of biometrics data that can be collected from individuals: (1) behavioral characteristics and (2) physiological characteristics. Behavioral characteristics concern the behavior of an individual, while physiological characteristics concern the shape or composition of the individual's body. Behavioral biometrics include an individual's keystroke, signature, and voice recognition. Physiological biometrics include facial recognition, fingerprint scanning, hand geometry, iris scanning, and DNA. Facial recognition systems use an individual's physiological information, such as facial structure, eye color, size, and shape.[1]

13. Biometric identifiers come in a variety of forms, including fingerprints, palm prints, iris/retinal scans, and scans of the facial geometry (facial recognition), which are unique to each person. There is a critical need for protecting and securing biometric identifiers because biometric identifiers:

- Create a specific link between an individual and a data record;
- Can be used to create fake digital identities for fraudulent purposes; and,
- Create a form of identification which is not exchangeable.
- Are immutable, and, if compromised by, for example, hacking, the biometric identifiers cannot be changed.

14. Consumer businesses, like Defendant, can use biometrics to identify consumers and link data to that consumer, including linking a consumer's biometric identifier to methods of

---

[1] Angelica Carrero, *Biometrics and Federal Databases: Could You Be in It?*, 51 J. MARSHALL L. REV. 589, 589–92 (2018).

payment, such as their credit cards and debit cards. The result is the creation of a vast repository of information (consumer purchasing history, purchasing habits, medical history for services paid with that credit card, etc.) that is tied to customer biometric information.

15. "Verification and identification are the two ways in which an individual's identity can be determined using biometric technology. Verification confirms that a person is indeed who they claim to be and performs a one-to-one comparison of the individual's [biometric] sample with a stored reference template. Identification, on the other hand, performs a one-to-many comparison to confirm an individual's identity. The identification process compares the individual's [] sample against all the reference templates stored on file. An individual is positively identified if the individual's [] image matches any of the stored templates."

16. Legislatures have correctly identified that the privacy rights tied to biometric identifiers is a worthy right warranting statutory protection. As such, state legislatures and city councils across the country have either passed or are considering passing biometric privacy statutes in order to protect the privacy rights of their constituents.

17. In 2008, prior to the passage of BIPA, the Illinois legislature stated the following in their findings regarding the collection of biometric information by private businesses, "[t]he use of biometrics is growing …. The full ramifications of biometric technology are not fully known. The public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." *Illinois House Transcript*, 2008 Reg. Session No. 276.

18. As such, BIPA, the Biometric Information Privacy Act (740 ILCS 14/1, *et seq.*), was passed by the Illinois legislature in 2008 because biometric identifiers can function as a unique digital "fingerprint" or set of data that allows the subject to be identified by various types of

biometric scanning. Per the statute, a "biometric identifier," which is what is collected by a biometric scanner – like a camera, or a digital fingerprint collector – "means a retina, iris scan, a fingerprint, a voiceprint, or a scan of the hand or facial geometry." Additionally, under the statute, "biometric information" is defined as "any information, regardless of how it is captured, converted, stored, or based on an individual's biometric identifier to identify an individual. 740 ILCS 14/5.

19. Because people cannot change their biometric identifiers, they will *always* be identifiable by biometric scanner.

20. BIPA prohibits a private entity from collecting, capturing, purchasing, receiving through trade, or otherwise obtaining a person's biometric information under 740 ILCS 14/15(a)-(b):

a. With respect to retention schedule and deletion schedule (740 ILCS 14/15(a)):

   i. A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first.

b. With respect to collection, capture and sharing (740 ILCS 14/15(b)):

   i. No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or information unless it first:

1. Informs the subject or the subject's legally authorized representative in writing that biometric identifier is being collected or stored;
2. Informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier is being collected, stored, and used; and,
3. Receives a written release executed by the subject of the [biometrics] or the subject's legally authorized representative.

21. This Action alleges that the Defendant, Walmart, violated every single prong of BIPA.

***<u>Defendant's Collection of Biometric Information and Identifiers</u>***

22. Defendant Walmart, a Bentonville, Arkansas-based corporation, is among the companies in the world and in the United States. Currently, there are 4,611 Walmart superstore locations in the United States with 152 stores located in the state of Illinois.

23. Often, consumers, like Plaintiff and Class members, will call their local store to inquire about the items they have bought or are intending to buy. However, instead of getting an actual customer service representative, Walmart delegates the responsibility of answering customer calls to AI. Specifically, the Walmart AI Voice System answers the phone when customers call with the following greeting, "Thank you for calling your local Walmart. We are open daily from [] am to [] pm and this call and your voice may be recorded for business purposes, including fraud detection." This is the greeting Plaintiff Smith received each of the three times she had called Walmart before the filing of this Action.

24. Additionally, Walmart defines personal information collected for fraud detection purposes in their privacy, in part, as "biometric information, such as voiceprints."

25. Plaintiff Smith was never made aware that her voiceprint was being collected and used in anyway by Walmart, let alone receive a retention or deletion schedule or having consented to this collection of biometric information in writing. Indeed, Plaintiff and Class members do not consent to this collection when they call their local Walmart, and merely including the collection of biometric information in Walmart's privacy policy is inadequate under state law and for purposes of providing consent in writing.

26. In direct contravention to BIPA, there are no adequate releases when the user calls Walmart's AI Voice System for the collection of voiceprints; additionally, in direct contravention of BIPA, Walmart does not disclose retention or deletion schedule when users call into their local Walmart and interact with Walmart's AI Voice System.

## CLASS ALLEGATIONS

27. Plaintiff seeks to certify a class of persons under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) who fall under the following definition (collectively, the "Class"):

> **Class Definition.** All Illinois residents who had their biometric identifiers, including scans of their voiceprints, collected, captured, received, disseminated, or otherwise obtained by Walmart by their Walmart's AI Voice System.

28. Excluded from the Class are Defendant's officers, directors, and employees; any entity in which Defendant has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendant. Also excluded from the Class are members of the judiciary to whom this case is assigned, their families, and members of their staff.

29. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

30. **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous that individual joinder of all Class Members is impracticable. On information and belief, Class Members number in the millions. The precise number or identification of members of the Classes are presently unknown to Plaintiff but may be ascertained from Defendants' books and records. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

31. **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all members of the Classes, which predominate over any questions affecting individual members of the Classes. These common questions of law or fact include, but are not limited to, the following:

i. Whether Defendant collected biometric identifiers;

ii. Whether Defendant violated the Biometric Information Privacy Act; and,

iii. Whether Plaintiff and the Classes are entitled to damages, statutory damages, and/or injunctive relief.

32. Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of themselves and the other Class Members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

33. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the claims of the other Class Members because, among other things, all such claims arise out of the same wrongful course of conduct engaged in by Defendants in violation of law as

complained of herein. Further, the damages of each Class Member were caused directly by Defendants' wrongful conduct in violation of the law as alleged herein.

34. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate representatives of the Classes because she is a member of the Classes and her interests do not conflict with the interests of the Class Members they seek to represent. Plaintiff has retained counsel competent and experienced in complex privacy and class action litigation. Plaintiff and her counsel intend to prosecute this action vigorously for the benefit of all Class Members. Accordingly, the interests of the Class Members will be fairly and adequately protected by Plaintiff and her counsel.

35. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for Class Members to individually seek redress for Defendants' wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## FIRST CAUSE OF ACTION

## VIOLATION OF THE ILLINOIS BIOMETRIC INFORMATION PRIVACY ACT

## ("BIPA")

## 740 ILCS 14/1, *et seq.*

36. Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

37. BIPA makes it unlawful for any private entity to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first: "(1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information. . . ." 740 ILCS 14/15(b).

38. Walmart is a Massachusetts corporation and thus qualifies as a "private entity" under BIPA.

39. Plaintiff and Class members are individuals who had their "biometric identifiers" and "biometric information," including scans of their voiceprints, collected, captured, received, or otherwise obtained by Walmart within the state of Illinois. *See* 740 ILCS 14/10.

40. Walmart systematically and automatically collected, used, and stored Plaintiff's and Class members' biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

41. In fact, Walmart failed to properly inform Plaintiff or the Class in writing that their biometric identifiers and/or biometric information was being "collected or stored" by Walmart,

nor did Walmart inform Plaintiff or Class members in writing of the specific purpose and length of term for which their biometric identifiers and/or biometric information was being "collected, stored and used," as required by 740 ILCS 14/15(b)(1)-(2).

42. By collecting, storing, and using Plaintiff's and the Class members' biometric identifiers and biometric information as described herein, Walmart violated the rights of Plaintiff and each Class member to keep private these biometric identifiers and biometric information, as set forth in BIPA.

43. Individually and on behalf of the proposed Class, Plaintiff seeks: (1) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Ring to comply with the BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (2) statutory damages for each intentional and reckless violation of the BIPA pursuant to 740 ILCS 14/20 (2), or alternatively, statutory damages pursuant to 740 ILCS 14/20(1) if the Court finds that Walmart's violations were negligent; and (3) reasonable attorneys' fees, costs, and other litigation expenses pursuant to 740 ILCS 14/20(3).

## PRAYER FOR RELIEF

44. WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, respectfully submit that this Court enter an order:

a. Certifying this case as a class action on behalf of the above-defined class;

b. Appointing Plaintiff as representative of the Class and appointing their listed counsel as Class Counsel;

c. Declaring that Walmart's actions, as set forth above, violate BIPA;

d. Awarding statutory damages for each and every reckless and intentional violation of BIPA, or, alternatively, statutory damages for each and every negligent violation of BIPA;

e. Awarding injunctive relief and other equitable relief to protect the interests of the Class;

f. Awarding Plaintiff and members of the Class their reasonable litigation expenses and attorneys' fees;

g. Awarding Plaintiff and members of the Class pre- and post- judgment interest, to the extent allowable;

h. And, awarding any other relief that this Court deems just and proper.

## JURY TRIAL DEMAND

45. Plaintiff hereby demands a trial by jury.

DATED: July 6, 2026

Respectfully submitted,

*s/ Blake Hunter Yagman*
Blake Hunter Yagman
*blake.yagman@yagmanpllc.com*
**YAGMAN PLLC**
RXR Plaza
626 RexCorp Plaza, Suite 605
Uniondale, New York 11556
Tel.: (929) 709-1493

*Attorneys for Plaintiff Smith*
*and members of the Proposed Class*