**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ***In re Walmart Voiceprint Biometric Privacy Litigation*** | Case No. 1:26-cv-07861<br><br>Hon. Sharon J. Coleman<br><br>**Jury Trial Demanded** |

# CONSOLIDATED CLASS ACTION COMPLAINT

Plaintiffs Anthony Wilson, Phylicia Washington, Amber Smith, Carol J. Krupke, Jeanne Thomas, and Sheila Wilkinson ("Plaintiffs"), individually and on behalf of other similarly situated individuals, bring this Consolidated Class Action Complaint against Defendant Walmart, Inc. ("Walmart" or "Defendant") for violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*. ("BIPA"), and to obtain redress for all persons injured by Walmart's conduct. Plaintiffs allege as follows based upon personal knowledge as to their own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## INTRODUCTION

1. Plaintiffs seek to represent a class of individuals whose privacy rights were unknowingly violated when they interacted with Walmart's automated interactive voice system that collected, stored, and disseminated their voice prints when they called Walmart's Customer Care line or telephone line for a specific store for information (the "Class").

2. On behalf of themselves and the proposed Class defined below, Plaintiffs seek an injunction requiring Walmart to comply with BIPA, as well as an award of statutory damages to the Class, together with costs and reasonable attorneys' fees.

## PARTIES

3. At all relevant times, Plaintiff Anthony Wilson has been a resident and a citizen of the state of Illinois.

4. At all relevant times, Plaintiff Phylicia Washington has been a resident and a citizen of the state of Illinois.

5. At all relevant times, Plaintiff Jeanne Thomas has been a resident and a citizen of the state of Illinois.

6. At all relevant times, Plaintiff Carole J. Krupke has been a resident and a citizen of the state of Illinois.

7. At all relevant times, Plaintiff Amber C. Smith has been a resident and a citizen of the state of Illinois

8. At all relevant times, Plaintiff Sheila Wilkinson has been a resident and a citizen of the state of Illinois.

9. Defendant Walmart, Inc. is a Delaware company, with its principal place of business in Benton, Arkansas, that conducts substantial business throughout Illinois, including in Cook County, and is registered with and authorized by the Illinois Secretary of State to transact business in Cook County, Illinois.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) as there are more than 100 class members, the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one member of the putative Class is a citizen of a state different from Defendant.

11. This Court has personal jurisdiction over Defendant and venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to this action occurred in this District, as Plaintiffs made telephone calls in Illinois to Walmart stores located in Illinois, Defendant collected Plaintiffs' voices and voice prints in Illinois, and, upon information and belief, stored Plaintiffs' and the other Class Members' voice prints and biometric information in violation of BIPA in Illinois. Moreover, the majority of the putative Class members and Plaintiffs made those telephone calls in this judicial District, to Walmart stores located in this District so that the facts giving rise to the claims asserted herein arose in this judicial District.

## THE BIOMETRIC INFORMATION PROTECTION ACT

12. "Biometrics" refers to a "biology-based set[s] of measurements." *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1094 (N.D. Ill. 2017). Specifically, "biometrics" are "a set of measurements of a specified physical component (eye, finger, voice, hand, face)." *Id.* at 1296.

13. BIPA was enacted in 2008 in order to safeguard individuals' biometrics as the result of the "very serious need [for] protections for the citizens of Illinois when it [comes to their] biometric information." Illinois House Transcript, 2008 Reg. Sess. No. 276. BIPA is codified as Act 14 in Chapter 740 of the Illinois Compiled Statutes.

14. As set forth in BIPA, biologically unique identifiers, such as a person's unique voiceprint, cannot be changed. 740 ILCS 14/5(c). The inalterable nature of biologically unique identifiers presents a heightened risk when an individual's biometrics are not protected in a secure and transparent fashion. 740 ILCS 14/5(d)–(g).

15. As a result of the need for enhanced protection of biometrics, BIPA imposes various requirements on private entities that collect or maintain individuals' biometrics, including voiceprints.

16. Among other things, BIPA seeks to regulate "the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 ILCS 14/5(g). BIPA thus applies to entities that interact with two forms of biometrics: biometric "identifiers" and biometric "information." 740 ILCS 14/15(a)–(e).

17. BIPA defines a "biometric identifier" as any personal feature that is unique to an individual, including fingerprints, voiceprints, and hand geometry. "Biometric identifiers" are physiological, as opposed to behavioral, characteristics. BIPA's text provides a non-exclusive list of protected "biometric identifiers," including "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10.

18. "Biometric information" is defined by BIPA as "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id*. This definition helps ensure that information based on a biometric identifier that can be used to identify a person is covered by BIPA. Collectively, biometric identifiers and biometric information are known as "biometrics."

19. In BIPA, the Illinois General Assembly identified four distinct activities that may subject private entities to liability:

a. possessing biometrics without a proper policy publicly available, 740 ILCS 14/15(a);

b. collecting biometrics, 740 ILCS 14/15(b);

c. profiting from biometrics, 740 ILCS 14/15(c); and

d. disclosing biometrics, 740 ILCS 14/15(d).

20. As the Illinois Supreme Court has held, BIPA "codified that individuals possess a right to privacy in and control over their biometric identifiers and biometric information." *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, ¶ 33, 129 N.E.3d 1197, 1206 (Ill. 2019).

The Illinois Supreme Court further held that when a private entity fails to comply with BIPA "that violation constitutes an invasion, impairment, or denial of the statutory rights of any person or customer whose biometric identifier or biometric information is subject to the breach." *Id.*

**A. Collecting Biometrics Under Section 15(b) of BIPA.**

21. BIPA imposes three requirements that must be satisfied before any private entity may "collect, capture . . . or otherwise obtain" an individual's biometrics:

a. First, the private entity must inform the individual in writing that the individual's biometrics are being collected or stored. 740 ILCS 14/15(b)(1).

b. Second, the private entity must inform the individual in writing of the purpose and length of time for which their biometrics are being collected, stored, and used. 740 ILCS 14/15(b)(2).

c. Finally, the private entity must receive a written release executed by the individual or a legally authorized representative. 740 ILCS 14/15(b)(3).

22. BIPA defines a "written release," outside the employment context, to mean "informed written consent." 740 ILCS 14/10.

**C. Profiting from Biometrics Under Section 15(c).**

23. BIPA further protects Illinois residents by prohibiting any entity in "possession of a biometric identified or biometric information" form "sell[ing], leas[ing], trad[ing], or otherwise profit[ing] from a person's or a customer's biometric identifier or biometric information." 740 ILCS 14/15(c).

**D. Disseminating Biometrics Under Section 15(d).**

24. BIPA also prohibits the "disclos[ure], redisclos[ure], or other[] disseminat[ion]" of biometrics without consent, unless the "disclosure or redisclosure completes a financial

transaction" that is requested or authorized by the individual, is required by law, or is required in order to comply with a valid warrant or subpoena. 740 ILCS 14/15(d).

## FACTUAL BACKGROUND

25. Walmart is one of the largest retailers in the nation, providing goods and services to tens of thousands of Illinois residents daily.

26. As part of its regular business operations, Walmart provides customer service phone numbers for each of its local Walmart locations as well as a main customer service number.

27. Walmart's customers, such as Plaintiffs, use these customer service numbers to connect to the store to inquire about things such as product inventory, in-store order pickups, as well as more personal requests such as refilling medication at the pharmacy.

28. However, unbeknownst to Plaintiffs and the other members of the Class, whenever they called Walmart's customer service phone lines their voiceprint prints or biometric information were collected by Walmart.

29. Indeed, Walmart itself admits as much via the automated voice prompt that greets Illinois customers calling their local Walmart's customer service line which states: "Thank you for calling your local Walmart. We're open daily from [] am to [] pm. This call and your voice may be recorded for business purposes, including fraud prevention," or "[t]his call and your voice may be recorded for quality or ***other business purposes***, including fraud prevention." Walmart fails to disclose what these other business purposes are.

30. Walmart, however, does not just "record" voices but creates voice prints from which it can identify callers, including Plaintiffs.

31. The Privacy Policy (updated June 18, 2026) that existed at the time these actions were originally filed specifically stated that under "What Personal Information Do We Collect?",

that Walmart collects "Biometric Information, such as voice prints," and under "How Do We Use Personal Information?", that it uses this and other information for "[h]elping to ensure security and integrity and prevent fraud," and for "[u]ndertaking activities to verify or maintain the quality or safety or our services or devices and to improve, upgrade, or enhance them, such as training our AI." It further states that Walmart uses sensitive information, for these purposes and to "make inferences about customers," which it may "use to promote certain products or services."

32. In the section entitled, "How Do We Collect Personal Information?", Walmart further states that it collects such information when "Provided Directly by You [the customer] or a Member of Your Household," when the customer "[r]equests customer service or contacts[s] us."

33. The Privacy Policy explains that this information is "[c]ollected through automated means," "when you [the customer] speak[s] to customer service." In that case, Walmart "collect[s] your personal information using call recording technology in accordance with applicable law."

34. Walmart further explains that the collected information is disclosed to vendors for "business purposes," Walmart marketplace and other direct to customer companies, Walmart suppliers, and for advertising, marketing and other related technology partners, including social media platforms to help serve personalized ads.

35. Under "How Long Do We Retain Your Personal Information?", the Privacy Policy states, "Biometric Retention Schedule: Walmart will permanently destroy your biometric identifiers and biometric information when the first of the following occurs: (i) the initial purpose for collecting or obtaining such biometric data has been satisfied; (ii) within 3 years of your last interaction with us; or (iii) as otherwise required by applicable law." However, under BIPA, this policy must be disclosed to customers, and there is no evidence that customers calling the customer

service line had such information verbally disclosed to them, and, accordingly, customers calling the customer service line could not and did not consent to such purported policy.

36. In order for Walmart to be able to utilize any voice recording for "fraud prevention" purposes, it must necessarily obtain a voiceprint from the caller in order to compare it against a voiceprint database of known fraudsters.

37. Walmart fails to provide any information whatsoever as to what "business purposes" it might be using Plaintiffs' and the other class members' voiceprint biometrics. Indeed, Walmart's use could be as broad as selling the voiceprints that it collects *en masse* to any number of unknown entities, including for such purposes as training AI models or creating a customer profile of all of their interactions and associated purchases and selling it so that other entities may target them with advertisements for their goods and services.

38. Moreover, Defendant has recently incorporated AI voice agents to interact with customers and to track customer interactions. These AI voice agents utilize "intent" analysis and directly interact with customers who call its customer service lines. On information and belief Defendant's AI voice agents incorporate the use of voice biometrics to operate and were likely trained using voice biometrics extracted from actual voice interactions, including those of Class members.

39. While thousands of individuals throughout Illinois have their voiceprints collected by Walmart on a daily basis when they interact with its customer service phone numbers, Walmart fails to ensure that it obtains consent to gather and use their voiceprint biometrics during the interaction as required by BIPA.

## FACTS SPECIFIC TO PLAINTIFFS

40. Plaintiff Anthony Wilson has called his local Walmart located at 10900 S. Doty Ave, in Chicago, Illinois on numerous occasions during the past year to inquire about products, services, and inventory.

41. During the relevant time period, Plaintiff Phylicia Washington has regularly contacted Walmart's customer service phone line regarding online purchases she has made.

42. Plaintiff Amber Smith has called her local Walmart in Riverside, Illinois on at least two occasions during the relevant time period regarding an order for pickup on December 14, 2025, as well as on December 10, 2025 to check in on the status of that same order.

43. Plaintiff Carol J. Krupke has contacted her local Walmart store located in Freeport Illinois on at least three occasions over the past year.

44. Plaintiff Jeanne Thomas has regularly called the customer service phone lines for her local Walmart stores located in Vandalia, Illinois and Effingham, Illinois during the relevant time period regarding her pharmacy prescriptions, servicing her vehicle, as well as to check product inventory.

45. During the relevant time period Plaintiff Sheila Wilkinson contacted her local Walmart store in Forest Park, Illinois regarding her Walmart purchases, including returning a product. Plaintiff Wilkinson contacted the Walmart Store using her personal cell phone number that has a Kentucky area code, "502."

46. Whenever Plaintiffs called Walmart's customer service phone lines, they would hear the same prompt as described above that "[t]his call and your voice may be recorded for business purposes, including fraud prevention."

47. Unbeknownst to Plaintiffs, as with the thousands of other putative class members, when Plaintiffs interacted with Walmart's employees through its customer service phone lines their unique voiceprints were obtained for unknown "business purposes" and to also cross-check against a database of known fraudulent callers.

48. Nor did Plaintiffs, like the thousands of Illinois residents who call Walmart's customer service phone lines, ever provide written consent allowing Walmart to capture, store, or disseminate their voiceprint biometrics.

49. Moreover, Walmart profited from Plaintiffs' voiceprints as they were collected during calls to provide information related to purchases and scheduling paid services.

50. By failing to comply with BIPA, Walmart has violated Plaintiffs' and the other Class members' substantive state law rights to biometric privacy.

## CLASS ALLEGATIONS

51. Plaintiffs bring this action on behalf of themselves and a Class of similarly situated individuals pursuant to Federal Rule of Civil Procedure, 23 as defined below:

**The Class**: All Illinois residents whose voiceprint biometric identifiers or biometric information were collected, captured, stored, transmitted, disseminated, or otherwise processed by or on behalf of Walmart when they called one of Walmart's customer service phone lines from Illinois within the last four years preceding the filing of this suit and whose written consent Walmart failed to obtain.

**The Subclass**: All Illinois residents with a non-Illinois area code whose voiceprint biometric identifiers or biometric information were collected, captured, stored, transmitted,

disseminated, or otherwise processed by or on behalf of Walmart when they called one of Walmart's customer service phone lines from Illinois within the last four years preceding the filing of this suit and whose written consent Walmart failed to obtain.

52. The following people are excluded from the Class: (1) any judge or magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

53. Numerosity: There are thousands of members of the Class and Subclass, making the members of the Class and Subclass so numerous that joinder as to each of the Class and Subclass members is impracticable. Although the exact number of members of the Class and Subclass is currently unknown to Plaintiffs, the members of the Class and Subclass can be easily identified through Defendant's records, and records maintained by Defendant's customers.

54. Typicality: Plaintiffs' claims are typical of the claims of the Class and Subclass Plaintiffs seek to represent, because the basis of Defendant's liability to Plaintiffs and the Class and Subclass are substantially the same, and because Defendant's conduct has resulted in similar injuries as to Plaintiffs and the Class and Subclass.

55. Commonality: There are many questions of law and fact common to the claims of Plaintiffs and the Class and Subclass, and those questions predominate over any questions that may affect individual members of the Class and Subclass.

56. Common questions for the Class and Subclass include, but are not limited to, the following:

a. Whether Defendant collects, captures, or otherwise obtains voiceprint biometric identifiers or biometric information from Illinois residents who interact with its customer service phone lines;

b. Whether Defendant obtained written consent from the members of the Class and Subclass prior to collecting their voiceprint biometrics and whether Defendant had a written policy as required under BIPA;

c. Whether Defendant profited from the Class and Subclass members' voiceprint biometrics;

d. Whether Defendant disseminated the Class and Subclass members' voiceprint biometrics;

e. Whether Defendant obtained a written release from the members of the Class and Subclass before capturing, collecting, or otherwise obtaining their voiceprint biometric identifiers or biometric information;

f. Whether Defendant's conduct violates BIPA;

g. Whether Defendant's BIPA violations are willful or reckless; and

h. Whether Plaintiffs and the other members of the Class and Subclass are entitled to damages and injunctive relief.

57. Superiority: Absent a class action, most members of the Class and Subclass would find the cost of litigating their claims to be prohibitively expensive and would thus have no effective remedy. The class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

58. Adequate Representation: Plaintiffs will fairly and adequately represent and protect the interests of the other members of the Class and Subclass they seek to represent. Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class and Subclass and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the other members of the Class and Subclass.

59. Predominance: Defendant has acted and failed to act on grounds generally applicable to the Plaintiffs and the other members of the Class and Subclass, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of both the Class and Subclass and making injunctive or corresponding declaratory relief appropriate for the Class and Subclass as a whole, respectively.

## COUNT I

**Violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/15/(b)**
**(On behalf of Plaintiffs and the Class and Subclass)**

60. Plaintiffs incorporate the foregoing allegations by reference as though fully set forth herein.

61. Defendant is a private entity subject to BIPA. 740 ILCS 14/10.

62. BIPA requires a private entity, such as Defendant, to obtain informed written consent from individuals before acquiring their biometric information. Specifically, BIPA makes it unlawful to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of for which a biometric identifier or biometric information is being captured, collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information . . . ." 740 ILCS 14/15(b).

63. Defendant does not implement any procedures to obtain written consent from individuals who interact with its customer service phone lines in Illinois.

64. As such, each instance when Plaintiffs and the other members of the Class and Subclass interacted with Defendant's customer service phone lines, Defendant captured, collected, stored, and/or used Plaintiffs' and the other Class and Subclass members' voiceprint biometrics without valid consent and without complying with and, thus, in violation of Section 15(b) of BIPA.

65. BIPA provides for statutory damages of $5,000 for each willful and/or reckless violation of BIPA and, alternatively, damages of $1,000 for each negligent violation of BIPA. 740 ILCS 14/20(1)–(2).

66. Defendant's violations of BIPA, a statute that has been in effect since 2008, were knowing and willful, or were at least in reckless disregard of the statutory requirements, given that that it knew that its customer service phone lines were used by thousands of Illinois residents and would be subject to the provisions of BIPA yet failed to comply with the statute.

67. Alternatively, Defendant negligently failed to comply with BIPA.

68. Accordingly, with respect to Count I, Plaintiffs, individually and on behalf of the proposed Class and Subclass, pray for the relief set forth below.

## COUNT II
**Violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/15(c)**
**(On behalf of Plaintiffs and the Class and Subclass)**

69. Plaintiffs incorporate the foregoing allegations by reference as though fully set forth herein.

70. Defendant is a private entity subject to BIPA. 740 ILCS 14/10.

71. Defendant implemented its customer service phone lines in order to fulfill placed orders, schedule paid services and provide updates on orders placed by Class and Subclass members, including Plaintiffs, and employed biometric technology to save money and expedite the customer experience and process.

72. As such Defendant profited from Plaintiffs' and the other Class and Subclass members' voiceprint biometric identifiers in violation of 740 ILCS 14/15(c). Defendant knew, or was reckless in not knowing, that the customer service phone line technology that it provided and operated and which thousands of Illinois residents interacted with would be subject to the provisions of BIPA yet failed to comply with the statute.

73. BIPA provides for statutory damages of $5,000 for each willful and/or reckless violation of BIPA and, alternatively, damages of $1,000 for each negligent violation of BIPA. 740 ILCS 14/20(1)-(2).

74. Defendant's violations of BIPA, a statute that has been in effect since 2008, were knowing and willful, or were at least in reckless disregard of the statutory requirements. Alternatively, Defendant negligently failed to comply with BIPA.

75. Accordingly, with respect to Count II, Plaintiffs, individually and on behalf of the proposed Class and Subclass, pray for the relief set forth below.

**COUNT III**
**Violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/15(d)**
**(On behalf of Plaintiffs and the Class and Subclass)**

76. Plaintiffs incorporate the foregoing allegations by reference as though fully set forth herein.

77. Defendant is a private entity subject to BIPA. 740 ILCS 14/10.

78. As discussed above, Plaintiffs and the other Class and Subclass members have had their "biometric identifiers," namely their voiceprints and unique data derived therefrom, *i.e.,* "biometric information," collected, obtained, stored, and thus possessed by Defendant when they interacted with Defendant's customer service phone lines in Illinois.

79. Section 15(d) of BIPA prohibits any private entity in possession of biometrics, such as Defendant, from disclosing, redisclosing, or otherwise disseminating an individual's biometric identifiers or biometric information without that individual's consent. 740 ILCS 14/15(d).

80. Defendant has disclosed or otherwise disseminated the biometrics of Plaintiffs and the other Class and Subclass members to third party companies. Specifically, Defendant's customer service phone lines rely on the dissemination of biometrics to third parties, such as data storage vendors, clients, and/or cloud service providers to enable the remote, automated operation of its biometric verification features.

81. Defendant never obtained Plaintiffs' or the other Class and Subclass members' consent to disclose or disseminate their biometrics to such third parties.

82. Accordingly, Defendant has violated Section 15(d) of BIPA.

83. Defendant knew, or was reckless in not knowing, that by disclosing or disseminating the biometrics of numerous Illinois residents as alleged above, it would be subject to Section 15(d) of BIPA, a statutory provision enacted in 2008.

84. BIPA provides for statutory damages of $5,000 for each willful and/or reckless violation of BIPA and, alternatively, damages of $1,000 for each negligent violation of BIPA. 740 ILCS 14/20(1)-(2).

85. Defendant's violations of Section 15(d) of BIPA, a statutory provision that has been in effect since 2008, were knowing and willful, or were at least in reckless disregard of the statutory requirements. Alternatively, Defendant negligently failed to comply with Section 15(d) of BIPA.

86. Accordingly, with respect to Count III, Plaintiffs, individually and on behalf of the proposed Class and Subclass, pray for the relief set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed Class and Subclass, respectfully request that this Court enter an Order:

a. Certifying the Class and Subclass as defined above, appointing Plaintiffs as class representatives, and the undersigned as class counsel;

b. Declaring that Defendant's actions, as set forth herein, violate BIPA;

c. Awarding injunctive and equitable relief as necessary to protect the interests of Plaintiffs and the Class and Subclass by requiring Defendant to comply with BIPA;

d. Awarding statutory damages of $5,000 for each willful and/or reckless violation of the BIPA, pursuant to 740 ILCS 14/20(2);

e. Awarding statutory damages of $1,000 for each negligent violation of BIPA, pursuant to 740 ILCS 14/20(1);

f. Awarding reasonable attorneys' fees, costs, and other litigation expenses, pursuant to 740 ILCS 14/20(3);

g. Awarding pre- and post-judgment interest, as allowable by law; and

h. Awarding such further and other relief as the Court deems just and equitable.

**JURY DEMAND**

Plaintiffs request a trial by jury of all claims that can be so tried.

Dated: October 14, 2026

Respectfully Submitted,

ANTHONY WILSON, PHYLICIA WASHINGTON, AMBER SMITH, CAROL J. KRUPKE, JEANNE THOMAS, and SHEILA WILKINSON, both individually and on behalf of the class of similarly situated individuals

By: /s/ *Eugene Y. Turin*
*One of Plaintiffs' Attorneys*

Evan M. Meyers
Eugene Y. Turin
Jordan R. Frysinger
Donald S. Cuba II
**McGuire Law, P.C.**
55 W. Wacker Drive, 9th Floor
Chicago, IL 60601
Tel: (312) 893-7002
emeyers@mcgpc.com
eturin@mcgpc.com
jfrysinger@mcgpc.com
dcuba@mcgpc.com

Tina Wolfson
**AHDOOT & WOLFSON, PC**
2600 W. Olive Ave, Ste 500
Burbank, CA 91505

Tel: (310) 474-9111
twolfson@ahdootwolfson.com

Bradley K. King
**AHDOOT & WOLFSON, PC**
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel: (917) 336-0171
bking@ahdootwolfson.com

Brian J. Devall
**AHDOOT & WOLFSON, PC**
201 King of Prussia Road, Suite 650
Radnor, Pennsylvania 19087
Tel: (310) 474-9111
bdevall@ahdootwolfson.com

Blake Hunter Yagman
**YAGMAN PLLC**
626 RexCorp Plaza, Suite 605
Uniondale, New York 11556
Tel.: (929) 709-1493
blake.yagman@yagmanpllc.com

*Interim Co-Lead Class Counsel for Plaintiffs and the Proposed Classes*